## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| YOLANDA LEWIS, individually and on behalf of all others similarly situated, | Case No.: _____ |
| Plaintiff, | |
| vs. | CLASS ACTION COMPLAINT |
| WALMART INC., | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Yolanda Lewis ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, files this Class Action Complaint against Defendant Walmart Inc. ("Walmart" or "Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and the investigation conducted by their counsel, on documents publicly available through Walmart and/or about Walmart and the products at issue, and upon information and belief.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this consumer class action individually and on behalf of a class of similarly situated owners of touchscreen tablet computers that Defendant marketed, sold, and distributed to customers and retailers across the country under its private label brand "Onn" (stylized by Defendant as "onn.")

2.      This action arises from Defendant's concealment of a material defect in the 2019, 2020, and 2021 Onn Surf and Pro tablets (the "Class Devices"). The displays of the Class Devices—which are necessary for their operation—are prone to cracking, developing black patches of "dead pixels," and otherwise ceasing to function as the result of the Class Devices' defective design and materials (the "Display Defect").

3.      Numerous customer reviews posted to Defendant's website attest to the fact that applying normal pressure to the screen of a Class Device during ordinary use or subjecting a Class Device to ordinary and foreseeable stress (such as allowing it to gently drop to a surface or placing it into or removing it from a protective case) can cause the screen to crack, malfunction, or cease to function. The Display Defect often renders the Class Devices unusable, typically within the warranty period.

1

4.      Walmart has long been aware of the Display Defect in the Class Devices.  Yet, notwithstanding its longstanding knowledge of the Display Defect, Defendant routinely has refused to repair or replace the Class Devices without charge when the Display Defect manifests.

5.      Many owners of the Class Devices have communicated with Walmart's employees and agents to request that Defendant remedy and/or address the Display Defect and/or resultant damage at no expense.  Defendant has failed and/or refused to do so.

6.      Moreover, Walmart has not taken sufficient action to warn consumers about the Display Defect. Defendant has not publicly acknowledged the Display Defect in any forum.

7.      As a result of Walmart's unfair, abusive, deceptive, and fraudulent business practices, owners of the Class Devices, including Plaintiff, have suffered an ascertainable loss of money, property and/or value.  The egregiously unfair, deceptive, and unconscionable trade practices committed by Defendant give rise to substantial aggravating factors.

8.      Had Plaintiff and Class members known about the Display Defect at the time of purchase, they would not have bought the Class Devices, or would have paid substantially less for them.

9.      As a result of the Display Defect and the monetary costs associated with attempting to repair damage caused by the Display Defect and replacing the Class Devices, Plaintiff and Class members have suffered injury in fact, incurred damages, and otherwise have been harmed by Defendant's conduct.

10.      Accordingly, Plaintiff brings this action to redress Walmart's violations of the Magnusson-Moss Warranty Act, the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1, *et seq*., breach of implied and express warranties, fraudulent misrepresentation, and unjust

enrichment. Plaintiff seeks monetary damages and equitable relief for Defendant's conduct described herein.

## PARTIES

### A. Plaintiff

11.     Plaintiff Yolanda Lewis is a citizen of Indiana residing in Gary.

### B. Defendant

12.     Defendant Walmart is a corporation formed under the laws of the State of Delaware with its headquarters in Bentonville, Arkansas.

13.     Defendant is primarily in the business of retail-variety stores. America's largest retailer by sales, Walmart operates over 11,500 stores under 56 banners, selling a variety of general merchandise and grocery items.

14.     Walmart sells products through dozens of private label brands, *i.e.*, goods that are manufactured by a third party but packaged and sold by Defendant under one of Walmart's private labels.

15.     Walmart's profit margins on private labels are higher than they are for well-known national brands, with aggregate figures suggesting private label sales generate around twice as much margin for a retailer as sales of national brands.[1] Walmart controls many or all aspects of the design and manufacture of their private label products.[2]

---

[1] James Brumley, *Walmart's Private-Label Brands Are Its New Edge*, Fool.com (Oct. 8, 2021), *available at* https://www.fool.com/investing/2021/10/08/walmarts-private-label-brands-are-its-new-edge/ (*last accessed* July 2, 2022).

[2] Brian Connolly, *2022 Guide to Walmart Private Label*, JungleScout.com (April 12, 2022), *available at* https://www.junglescout.com/blog/walmart-private-label-brands/ (*last accessed* July 2, 2022).

16.     Walmart exerts substantial control over the design and manufacturing of its private labels, including Onn, and conducts quality control checks directly or through its agents.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a putative class action in which more than two-thirds of the proposed Class members are citizens of states other than the state in which Defendant is deemed to reside. In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Walmart because it has sufficient minimum contacts in this District to render the exercise of jurisdiction by this Court proper and Walmart otherwise intentionally avails itself of the Indiana markets through promotion, sale, marketing and distribution of the Class Devices in and from Indiana, which renders the exercise of jurisdiction by this Court proper and necessary. Further, Plaintiff's claims arise out of Defendant's contacts with Indiana as Plaintiff, an Indiana resident, purchased Defendant's defective Class Devices from Defendant's website while in Indiana.

19.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of at least one Plaintiff occurred in this District.

## PLAINTIFF SPECIFIC ALLEGATIONS

20.     Plaintiff Lewis purchased a total of five Class Devices through Walmart's website: four new 7" models were purchased on January 1, 2021, and an additional 7" model was purchased on January 17, 2021, each for $49.87.

21.     The fact that Defendant advertised and warranted the Class Devices as dependable and versatile tablets with high quality displays was material to Plaintiff Lewis and to other reasonable consumers. Plaintiff Lewis believed that the Class Devices were durable; for this reason, she purchased multiple tablets for her children to use.

22.     On or around January 2021, after approximately 16 days of ownership, the screen of one of Plaintiff Lewis' Class Devices shattered after falling from the couch to the floor—a distance of approximately 24 inches. Plaintiff Lewis was surprised to see the damage to the device in light of the short fall. The Class Device was unusable after this occurred and Plaintiff Lewis purchased a replacement Class Device from Defendant on January 17, 2021.

23.     Plaintiff Lewis' remaining four Class Devices each ceased operating within approximately six months. In or around July 2021, the touchscreens of each of her devices stopped registering touch inputs. Shortly thereafter, the devices would not charge when plugged in, even when Plaintiff Lewis tried different chargers. Once their respective batteries ran out, they became completely unusable.

24.     Images of some of Plaintiff Lewis' defective Class Devices are below:









25.     Plaintiff Lewis spent approximately 5 hours researching the various issues she experienced with her Class Devices, including why their touch screens stopped working and why they would not charge.

26.    Plaintiff Lewis used and maintained her Class Devices in a manner typical of a reasonable consumer.

**COMMON FACTUAL ALLEGATIONS**

A.    **Background**

27.    The tablet market in the United States is the largest globally, accounting for around one-third of all annual tablet unit shipments worldwide. The U.S. tablet market size was valued at USD 18 billion in 2016,[3] and has since grown to 19.21 billion in 2021, with over 58 million tablets sold nationwide.[4]

28.    The display is a critical piece of hardware in a tablet as it is the primary interface through which a user interacts with the device. There is intense competition in the smart tablet market over display quality and size.[5]

29.    Like most tablet computers, the Class Devices use capacitive touchscreen technology to allow a user to interact with the device through the screen. In nearly all portable touchscreen device applications:

> Capacitive screens are made up of multiple layers of glass and plastic, coated with a conductor material like indium tin oxide or copper. This conductive material responds when contacted by another electrical conductor, like your bare finger. When you touch your screen, an electric circuit is completed at the point where your

---

[3] *U.S. Tablet Market Size, Share & Trends Analysis Report By Operating System Type (Android, iOS), Competitive Landscape, And Segment Forecasts, 2018 – 2025*, Grandviewresearch.com, *available at* https://www.grandviewresearch.com/industry-analysis/us-tablet-market (*last accessed* July 2, 2022).

[4] Thomas Alsop, *Tablet market in the U.S. - Statistics & Facts*, Statista.com (Feb. 9, 2022), *available at* https://www.statista.com/topics/2927/tablets-in-the-us/#dossierKeyfigures (*last accessed* July 2, 2022).

[5] *See, e.g.,* Robert Triggs, *The Best of Android: Mid-2020 — Which tablet has the best display?,* AndroidAuthority.com (Jul. 13, 2020), *available at* https://www.androidauthority.com/best-of-android-mid-2020-display-1135186/ (*last accessed* July 2, 2022).

> finger makes contact, changing the electrical charge at this location. Your device registers this information as a "touch event."
>
> Once a touch event has been registered, the screen's receptors signal this event to the operating system, prompting a response from your device. This is the application's interface that you experience.[6]

30.    In nearly all portable touchscreen device applications, the outermost layer of the screen is protective glass coated with a conductive material. Under that is the "digitizer," a layer of coated glass or polymer that senses analog touch inputs and converts them into digital signals. Under the digitizer is the display layer, typically a liquid crystal display ("LCD"). The digitizer connects to the LCD using a flex cable, and the flex cable transmits the converted digital signals to the LCD.[7]

31.    LCDs are comprised of tiny elements of color called pixels. LCDs produce images by illuminating these pixels with either red, green or blue light. Most LCDs use a grid of wires to power the layer of pixels.

32.    A digitizer will lose some or all of its function if it is physically damaged or its connection to the other hardware is disconnected or damaged. A damaged digitizer may not accurately detect touch events, meaning the touchscreen may fail to respond to user interaction appropriately or become completely inoperable.[8] Likewise, damage to the LCD, specifically to

---

[6] Sophie Sirois, *How Do Touch Screens Work on Laptops and Tablets?*, HP.com (Dec. 12, 2018), *available at* https://www.hp.com/us-en/shop/tech-takes/how-do-touch-screens-work#:~:text=Capacitive%20screens%20are%20made%20up,conductor%2C%20like%20your%20bare%20finger (*last accessed* July 2, 2022).
[7] *What Is a Touchscreen Digitizer?*, Nelson-miller.com (Sep. 11, 2019), *available at* https://nelson-miller.com/what-is-a-touchscreen-digitizer/#:~:text=In%20touchscreen%20devices%2C%20the%20digitizer,crystal%20display%20(LCD)%20layer (*last accessed* July 2, 2022).
[8] *Id.*

the grid of wires powering the pixels, can cause pixels to lose power and "die." Sufficient

damage will result in groupings of dead pixels that form black spot(s) on the display.

### B.    The Onn Surf Tablets

33.    First announced on March 13, 2019, and made available for purchase on or

around May 22, 2019, Walmart began selling two sizes of the Class Devices: the 10.1" and 8"

models, which retailed for $79 and $64, respectively. Aside from their display size, both devices

were equivalent in all relevant respects.[9] Walmart subsequently introduced a 7" model of the

Class Devices, which retailed for $59. Although Defendant has updated all three of these models

and increased prices since their launch, the hardware of subsequent Class Devices is equivalent

in all respects relevant to this action.

34.    Walmart marketed, sold, and distributed the Class Devices to customers and

retailers across the country under its private label brand "Onn."

35.    The Class Devices were manufactured by LightComm Technology Co., LTD

("Lightcomm"), a Chinese manufacturing company.

36.    In this capacity, Lightcomm served as Walmart's agent. Defendant controlled and

directed Lightcomm in the manufacture of the Class Devices. This is evidenced by the fact that

Lightcomm is a private label supplier to Defendant and as such is subject to numerous

compliance obligations concerning the Class Devices.

37.    Defendant requires its suppliers, like Lightcomm, to undergo regular audits and

inspections. Before initiating a business relationship, Defendant requires each supplier to enter

into a Supplier Agreement and undergo at least three "Pre-Qualification Audits" conducted by

---

[9] Simon Hill, *Walmart Onn Android Tablet Review*, Digitaltrends.com (Oct. 7, 2019), *available at* https://www.digitaltrends.com/mobile/walmart-onn-review/ (*last accessed* July 2, 2022).

Walmart's designated auditors, including a Factory Capability & Capacity Audit, a Responsible Sourcing Audit, and a Supply Chain Security Audit.[10] Defendant also audits and inspects its suppliers on an ongoing basis. The "Private Brands" page on Defendant's Chinese website explains that "All manufacturers of our private branded products are tested for safety and audited regularly to ensure consistent standards of quality. Walmart selects our manufacturing partners carefully and works with them directly to secure lower prices compared to similar products in the market."[11] Elsewhere, Defendant explains that "Doing business with Walmart requires making your products, facilities, and records available for audits, inspections, and tests. You must obtain required audits, inspections, and tests in accordance with Walmart policy and provide the results to Walmart, collaborating with Walmart to resolve any issues."[12]

38.     Additionally, suppliers must comply with a multitude of other ongoing obligations imposed by the Supplier Agreement. In the Standards for Suppliers manual, Defendant's CEO, Doug McMillon, states "We hold our suppliers to the same high standards we set for ourselves."[13] Among other things, Walmart "require[s] our suppliers to meet all laws,

---

[10] *Supplier Requirements*, Walmart.com, *available at* https://corporate.walmart.com/suppliers/requirements (*last accessed* Dec. 20, 2022).

[11] *Private Brands*, Walmart.cn, *available at* https://en.walmart.cn/private-1/ (*last accessed* Dec. 20, 2022).

[12] *Audits, Certifications and Testing*, Walmart.com, *available at* https://corporate.walmart.com/suppliers/requirements/audits-and-certifications (*last accessed* Dec. 20, 2022).

[13] *Standards for Suppliers (Product Suppliers)* at 3, Walmart.com, *available at* https://corporate.walmart.com/media-library/document/standards-for-suppliers-english/_proxyDocument?id=0000015c-e70f-d3b4-a57e-ff4f3f510000https://en.walmart.cn/private-1/ (*last accessed* Dec. 20, 2022) (explaining that "The Standards apply to suppliers of Walmart Inc. and suppliers of Walmart-controlled subsidiaries globally. Suppliers include anyone that provides products to Walmart, including goods for resale and for Walmart's own use. A signed supplier agreement, acceptance of a purchase order, and/or provision of merchandise to Walmart constitutes acceptance of these Standards and serves as the Supplier's continuing affirmation of compliance. In addition, Walmart may enter into contracts with certain

mandatory standards, applicable voluntary consensus standards, and Walmart-specific requirements for all items offered for sale," and "expect[s] you to meet our expectation of complying with consumer protection laws everywhere we do businesses [*sic*]."[14] Walmart makes clear that its business relationship with its suppliers is contingent upon compliance with Walmart's standards, and "Walmart reserves the right to audit or inspect suppliers at any time to determine whether they are complying with these Standards."[15] Defendant requires its suppliers to "Uphold High Standards for Safety and Quality" by, *inter alia*, "Monitoring products you produce for safety and quality and promptly reporting material issues to Walmart."[16]

39.     Walmart sold the Class Devices through its physical locations and website and distributed the Class Devices to be sold through other authorized retailers as well, primarily Amazon.com. Many Class Device owners purchased their tablets through Amazon.com.

40.     Walmart and authorized retailers sold Class Devices to tens of thousands of consumers throughout the United States, including in the Plaintiff's home state. Walmart disseminated marketing materials for the Class Devices from its Arkansas headquarters.

41.     Defendant marketed, promoted, and advertised the Class Devices as, among other things, the "dependable, versatile range of tablets for every household" with a heavy focus on their screen quality.

---

other parties that require those parties to comply with these Standards. In this document, we refer to anyone covered by the Standards as a 'supplier.'").

[14] *Supplier Expectations Compliance Areas*, Walmart.com, *available at* https://corporate.walmart.com/suppliers/requirements/compliance-areas#product-safety (*last accessed* Dec. 20, 2022).

[15] *Standards for Suppliers (Product Suppliers)* at 5, Walmart.com, *available at* https://corporate.walmart.com/media-library/document/standards-for-suppliers-english/_proxyDocument?id=0000015c-e70f-d3b4-a57e-ff4f3f510000https://en.walmart.cn/private-1/ (*last accessed* Dec. 20, 2022)

[16] *Id.* at 12.

42.    As Walmart's entry into the tablet market, the Class Devices are competing with a variety of tablets known for their large, high-quality screens. The display is critical to the function of the Class Devices: as they possess no more than three physical buttons,[17] the vast majority of user interactions are conducted by tapping, swiping, and touching the graphical interface shown on the device's display.

43.    Defendant consistently highlighted the size and high quality of the Class Devices' "crystal-clear display," claiming their "2.5D touchscreen gives you 800 x 1280 resolution so your photos, movies, apps, documents, and more pop with crystal clear vibrancy."[18] Defendant also touted the "stunning clarity" of the display.[19]

44.    Defendant marketed all Class Devices as offering the same high-quality display. Defendant uniformly marketed, promoted, and advertised the Class Devices as fully functioning

---

[17] *See Onn 10.1" Tablet 100003562 User Guide*, Manualsplus.com, *available at* https://manuals.plus/onn/10-1-tablet-100003562-manual#getting_to_know_your_tablet (*last accessed* July 2, 2022).

[18] *onn. 10.1" Tablet, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/ip/onn-10-1-Tablet-32GB-2020-Model/248528865?athbdg=L1600 (*last accessed* July 2, 2022); *see also onn. 8" Tablet, 16GB Storage*, Walmart.com (archived Oct. 4, 2019), *available at* https://web.archive.org/web/20191004055901mp_/https://www.walmart.com/ip/Onn-Android-Tablet-8-16GB-Storage-Bonus-20-off-Walmart-eBooks-Included/767511102 (*last accessed* July 2, 2022); *onn. 10.1" Tablet, 16 GB Android Tablet*, Walmart.com (archived Oct. 4, 2019), *available at* https://web.archive.org/web/20190914120712mp_/https://www.walmart.com/ip/Onn-10-1-16-GB-Android-Tablet-Bonus-20-off-Walmart-eBooks-Included/258891221 (*last accessed* July 2, 2022); *onn. 7" Tablet 16GB Android*, Walmart.com, *available at* https://www.walmart.com/ip/onn-7-Tablet-16GB-Android-Bonus-10-off-Walmart-eBooks-Included/337319622 (last accessed July 2, 2022).

[19] *onn. 8" Tablet Pro, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/ip/onn-8-Tablet-Pro-32GB-2020-Model/648267237 (*last accessed* July 2, 2022).

tablets without defects, including but not limited to any faults in the display or any predisposition to suffer display-related issues.

45.     Defendant also marketed the Class Devices as suitable for children, encouraging consumers to "Enjoy the new Kids Mode for the younger ones,"[20] and Defendant representing that the Class Devices are "perfect for kids."[21]

46.     Plaintiff and thousands of other consumers purchased the Class Devices based on Walmart's representations that they were dependable and versatile tablets offering broad functionality and durable enough to be suitable for children. Defendant's representations regarding the size and quality of the display were material selling points to Plaintiff, who purchased the tablets to be used for, *inter alia*, watching movies, browsing the internet, playing video games, viewing photos, and other uses that benefit from a high-quality display. Defendant portrayed the Class Devices being used for each of these activities in its marketing.

47.     But Defendant failed to disclose the crucial fact that the Class Devices suffer from the Display Defect. The existence of the Display Defect renders Defendant's marketing false and misleading, in particular its claims with regard to the dependability and versatility of the Class Devices, as well as the quality of their displays.

48.     Defendant knew or should have known about the Display Defect before releasing the Class Devices. Despite this knowledge, Walmart marketed the Class Devices as high quality, dependable, and versatile tablet computers, offering broad functionality. But the existence of the

---

[20] *onn. 10.1″ Tablet, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/ip/onn-10-1-Tablet-32GB-2020-Model/248528865?athbdg=L1600 (*last accessed* July 2, 2022).
[21] *onn. 8″ Tablet Pro, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/ip/onn-8-Tablet-Pro-32GB-2020-Model/648267237 (*last accessed* July 2, 2022).

Display Defect ensures that many owners of Class Devices are in fact unable to "surf the internet, read email, watch movies, read eBooks, listen to music, play games, and take pictures and video" as promised by Defendant's marketing materials.[22]

## C. The Display Defect

49.    Numerous Class Device purchasers have found that their displays unexpectedly cracked or malfunctioned as the result of ordinary use of a Class Device, or as the result of ordinary stress upon their Class Device (such as allowing it to make a short drop to a surface). Not only do protective cases appear to offer little protection from damage arising from the Display Defect, but they are also often cited as the cause of the damage (*e.g.*, the display cracks when trying to insert or remove a Class Device from a screen protector). Damage arising from the Display Defect happens without warning and most often renders the tablets unusable.

50.    To assess the cause of this common and widespread occurrence, Plaintiff's counsel consulted Dr. David Niebuhr of Niebuhr Metallurgical Engineering.  Dr. Niebuhr is a Professional Metallurgical Engineer and former Professor of Materials Engineering and current Adjunct Professor in Mechanical Engineering at California Polytechnic State University.  Dr. Niebuhr has devoted more than 25 years of his career to product development, materials selection, and design and failure analysis.

51.    Dr. Niebuhr compared the Class Devices to comparable portable tablet devices to determine what was different in the Class Devices and what was causing Plaintiff's and Class members' displays to crack, blotch, or otherwise cease to function altogether.

---

[22] *Onn Android Tablet, 8", 16GB Storage*, Walmart.com (archived Oct. 4, 2019), *available at* https://web.archive.org/web/20191004055901mp_/https://www.walmart.com/ip/Onn-Android-Tablet-8-16GB-Storage-Bonus-20-off-Walmart-eBooks-Included/767511102 (*last accessed* July 2, 2022).

52.    His evaluation of the Class Devices focused primarily on materials and structural design.  Based on Dr. Niebuhr's preliminary assessment, he determined that the Class Devices suffer from a defect that renders the display subject to cracking, blotching, and failure during regular use even by the most careful consumer.

53.    Specifically, Dr. Niebuhr attributes the source of the Display Defect to twin faults: the use of inappropriate materials for the touchscreen and case, and a flawed case design.

54.    Testing conducted by Dr. Niebuhr revealed that the touchscreen is made from poly(ethyl acrylate) ("PEA"). This polymer is cheaper than glass, which is far and away the most common touchscreen material, and cheaper than polymers that are commonly used in touchscreens, *e.g.*, polycarbonate (also used to make lenses for glasses) or poly(methyl methacrylate) (also known as plexiglass). PEA is also more susceptible to scratching and fracture than the more commonly used touchscreen materials. Extensive research was unable to find any examples of PEA being used for a touchscreen application. Compared with the standard choices for touchscreen construction, PEA possesses low impact resistance and tensile strength.

55.    The same testing found that the Class Device cases are made of polystyrene. This polymer is cheaper than polycarbonate, the polymer most commonly used to construct the cases of portable electronic devices.[23] Although brittle when unadulterated, most commercial polystyrene contains additives that permit some flexibility—a feature that makes this polymer inappropriate for the Class Devices.

56.    The polystyrene case of the Class Devices lacks interior features that would prevent it from bending and twisting (for example, internal buttresses or ridges) when force is

---

[23] *See* Chin Trento, *What is the Material of Your Phone Body?*, Stanford Advanced Materials, *available at* https://www.samaterials.com/content/what-is-the-material-of-your-phone-body.html (*last accessed* July 2, 2022).

applied to the device. The touchscreen, which, due to the properties of PEA, is brittle and prone to fracture, needs a rigid case to protect it. In the absence of a rigid case, even slight bending or twisting of a Class Device can cause the touchscreen to crack.

57.     Given the design defect, the Class Device displays are not strong enough to endure the stresses they experience in the course of normal and foreseeable use.

58.     As a secondary effect of Defendant's inappropriate material choices and case design, the Class Device touchscreens are prone to black blotching and complete failure. Black discoloration on the touchscreens is caused by dead pixels, which result from physical damage to the touchscreen, specifically the underlying LCD. Similarly, physical damage to the display can cause the digitizer to stop registering touch or to fail completely. Because the Class Device touchscreens are extremely susceptible to physical damage arising from ordinary use, a large percentage of Class Devices experience screen blotching, touch failure, or dead screens.

59.     Below are photos of manifestations of the Display Defect.



*Figure 1 A Class Device with a fractured display*



*Figure 2 Close shot of a Class Device's fractured display*

60.     The Display Defect can manifest inside or outside of the return and warranty periods, but it typically causes damage before the 1-year warranty period is over. In some tablets the Display Defect manifests within the first days of use; in other cases the Display Defect may become apparent only after months of use.

61.     The Display Defect is latent in nature because it is not obvious or ascertainable upon reasonable examination.  Further, as described herein, Walmart did not disclose the Display Defect in any marketing materials or elsewhere.

62.     The Display Defect renders much of Defendant's express representations misleading. For example, the Class Devices are not durable enough for children to use. Nor are

the Class Devices "dependable" or "versatile": any manifestation of the Display Defect renders the device unsuitable for nearly all uses, and in many cases renders the devices completely inoperable (*e.g.*, the display may fail or the user may not be able to log in due to the touchscreen not responding to user input). A defective display that is cracked is not "crystal-clear" and cannot display "photos, movies, apps, documents, and more . . . with crystal clear vibrancy." [24]

### D. Defendant's Knowledge of the Display Defect

63.     Defendant owed Plaintiff and all those similarly situated a duty to disclose the Display Defect. At the earliest, Defendant knew that the Class Devices were susceptible to display problems before they were released to the market. Alternatively, Defendant knew of the Display Defect no later than late 2019 as customer reviews made clear that the displays were prone to cracking. Defendant did not, however, disclose this information to consumers who were making their purchasing decisions. A reasonable consumer would assume that a tablet marketed as a "dependable, versatile" device possessing a "crystal-clear display"—and marketed specifically as suitable for children—would possess a display that is not susceptible to catastrophic failure caused by ordinary use.

64.     Plaintiff and those similarly situated did not, and could not, unravel Defendant's pattern of deception and public silence.

65.     Walmart knew or should have known about the Display Defect prior to releasing the first models of Class Devices due to quality controls and pre-release testing process.

66.     Like any consumer electronics manufacturer, Defendant or its agents tests its products prior to release. Defendant or its agents built prototypes of the Class Devices and

---

[24] *onn. 10.1" Tablet, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/ip/onn-10-1-Tablet-32GB-2020-Model/248528865?athbdg=L1600 (*last accessed* July 2, 2022).

conducted extensive validation testing during the pre-production phase of the development of the Class Devices. The purpose of such testing is to expose any design or manufacturing weaknesses that may result in field failures, warranty claims, and general functional reliability over the intended life of their products.

67.     Validation testing covers all system aspects of the device, including mechanical and system reliability, as well as safety, compliance to applicable standards, electromagnetic emissions, energy efficiency & sustainability.  Mechanical and system reliability tests are designed and used to demonstrate that a design and the finished product perform reliably for the life of the product.

68.     As discussed above, Defendant regularly audits its private label product suppliers "to ensure consistent standards of quality."[25] "Walmart reserves the right to audit or inspect suppliers at any time to determine whether they are complying with" Defendant's rigorous set of supplier standards.[26] These audits include quality control and validation product testing. Defendant also requires its suppliers to "Uphold High Standards for Safety and Quality" by, *inter alia*, "Monitoring products you produce for safety and quality and promptly reporting material issues to Walmart."[27]

69.     Thus, Defendant's pre-release testing would have revealed the Display Defect. Because the damage arising from the Display Defect commonly manifests during normal use,

---

[25] *Private Brands*, Walmart.cn, *available at* https://en.walmart.cn/private-1/ (*last accessed* Dec. 20, 2022).
[26] *Standards for Suppliers (Product Suppliers)* at 5, Walmart.com, *available at* https://corporate.walmart.com/media-library/document/standards-for-suppliers-english/_proxyDocument?id=0000015c-e70f-d3b4-a57e-ff4f3f510000https://en.walmart.cn/private-1/ (*last accessed* Dec. 20, 2022)
[27] *Id.* at 12.

happens suddenly, and is obvious, even negligible testing would have revealed that the Class Devices suffer from the Display Defect.

70.    After releasing the Class Devices, in connection with marketing, selling, and distributing the Class Devices, Defendant knew or should have known about the Display Defect due to post-release failure analyses, internet reviews, consumer complaints, warranty claim data, return data, and replacement part sales data.

71.    Though Walmart's warranty and return data is not publicly accessible, it is apparent that a significant percentage of Class Device owners have sought to return their devices both within and outside of the warranty period because of the Display Defect. Thus, Defendant would have been made aware of the Display Defect beginning soon after the initial release of the Class Devices due to the large number of returns and/or warranty claims made during the Class Devices' warranty period.

72.    Defendant also monitors the internet for articles, comments, and posts made about the Display Defect. At a minimum, Defendant reviews the reviews posted to its own website for problems with its merchandise.

73.    Online reputation management ("ORM") is now a standard business practice among most major companies, including Defendant, and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on consumer services.  "Specifically, [ORM] involves the monitoring of the reputation of an individual or brand on the internet, addressing content which is potentially damaging to it, and

using customer feedback to try to solve problems before the damage to the individual's or brand's reputation."[28]

74.    Soon after Walmart began selling the Class Devices, customers began posting complaints about their displays to Walmart's website. It rapidly became obvious that the Display Defect is a serious problem for the Class Devices.

75.    A multitude of owners of Class Devices have complained about the impact of the Display Defect in reviews of the tablets, primarily on Walmart's own website. Below is a sample of relevant reviews posted to the Class Devices' product pages on Walmart.com:

- *Review by Jessica on Jun. 25, 2019*: **CRAP!** Worst purchase ever! One day and the screen is cracked and tablet will not work! Crap in a box! Do not buy![29]

- *Review by Monisha on Nov. 4, 2020*: **Don't buy!** One simple crack will stop the screen from working. Went through 2 of these tablets in less than 2 weeks. The second time I had a screen protector and the screen on the table cracked and the protector was still perfect. [30]

- *Review by Kari on Apr. 14, 2021*: **Cheaper means cheaply made** The tablet seemed to be functioning fine however I bought the corresponding screen protector and case for it. It will not charge with the case on it. About two weeks after purchase while removing the case the screen cracked. I had removed the case to charge it several times before without an issue. I was not using excessive force. I bought a tablet for my daughter as well and she cracked her screen within a month.[31]

---

[28] *Online Reputation*, WebSolutions, *available at* https://websolutions-maine.com/online-reputation/ (*last accessed* Oct. 20, 2022).

[29] *onn. 8" Tablet 16GB*, Walmart.com, *available at* https://www.walmart.com/reviews/product/337319622?filter=1&page=5 (*last accessed* July 2, 2022).

[30] *Id.*

[31] *onn. 8" Tablet, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/reviews/product/432705729?filter=1 (last accessed July 2, 2022).

- *Review by Audreysfn on Jan. 10, 2021*: **Don't bother**
  We got this for our 9yo for Xmas. It was broken within 5 days. I've never seen such a cheap, flimsy tablet. While it worked it did work well. The system ran well and all of his games and videos worked perfectly. Sadly, the screen is extremely delicate and with just a small ding (I saw it happen[32]

- *Review by Cassandra on Aug. 13, 2021*: **Not Worth It!**
  This is ridiculous! I have bought three of these tablets and they have cracked in the same place every single time. They have always had a screen protector and a case on them. Weren't dropped, were used carefully, and still every single one of them cracked the screen![33]

- *Review by Kaylee on Apr. 18, 2021*: **Don't waste your money.**
  This tablet sucks. I got it twice. Once by delivery, it was shattered when I opened the box. Got a refund for that one because they were "out of stock" but they had some at the store so we just bought another one there. It had a glass screen protector AND a durable case with another screen protector attachment. My son got ahold of it and dropped it over our baby gate (about 3 feet) and the screen itself got one small crack in it, and the screen does not work at all anymore. These tablets are garbage. Don't waste your money.[34]

- *Review by Tameka on Apr. 1, 2021*: screen black out and stop working[35]

- *Review by Elizabeth on Jul. 6, 2020*: I bought two for my kids put screen protectors an a case on them. My son barely dropped his the screen shattered it still came on but wouldnt respond to touch.... He didnt even have it 3 days... my daughters hasnt been cracjed or anything and all of a sudden the screen has quit responding to touch its lasted abiut two weeks.. I do not recommend this brand. But hey you get what you pay for[36]

- *Review by Misael on Oct. 15, 2021*: Until it shattered, it was good. It fell from less than a foot onto a well carpeted floor and cracked to where it's completely unviewable. No other device I

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *onn. 8" Tablet Pro, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/reviews/product/648267237?filter=1 (last accessed July 2, 2022).

own has taken damage from such a drop. It either fell at just the exact angle to shatter into uselessness or it's a matter of quality. until that, it was good enough that I was about to buy them for all my grandkids.[37]

- *Review by Kay on May 20, 2022*: Don't fall for the price point not worth it! Better off just spending extra on a decently made tablet. Just bought this for light use, with a rubber case and screen protector. And either digitizer has messed up or screen has shattered with MINIMAL impact. This has happened 3 times! I've had an iPad for 5 years that I use 9-10hrs a day it has been through it and has no cracks and works perfectly but this thing can't take a 2in drop onto my kitchen table.[38]

- *Review by Krystal on Jun. 24, 2022*: **Cheap and useless** worst tablet ever! Glad i got the 2 year protection plan because the screen cracks from normal use. Cheapest made tablet ever! Very disappointed. Replacing AGAIN since March 2022 (this will be the 3rd time!) Do not waste your money[39]

- *Review by Unhappymamma0202 on Aug. 27, 2021*: **Hate it overall!**
  Won't last long enough to matter. We owned two, one stopped charging within 3 months and the other one had a touch screen that stopped responding within 6 months.[40]

- *Review by NoName on Sep. 5, 2021*: **DO NOT BUY, WASTE OF                    MONEY!**
  We've had 4 of these tablets all different sizes. They get one crack in the screen and completely stop working. You can't do anything after the screen cracks. Other tablets get cracks and still work. Glad I bought a warranty on my last one.[41]

- *Review by Codi on Mar. 28, 2022*: don't buy this this is the worst tablet ever and such a waste of money I've bought 4 different ones and none of them lasted a week. this one i got in mail today is already broken i put on car and protection screen didn't help i went to pick it up screen shows nothing. but

---

[37] *Id.*

[38] *onn. 10.1" Tablet, 32GB (2020 Model)*, Walmart.com, *available at* https://www.walmart.com/reviews/product/248528865?filter=1 (last accessed July 2, 2022).

[39] *onn. 7" Tablet, 16GB (2021 Model)*, Walmart.com, *available at* https://www.walmart.com/reviews/product/800435260?filter=1 (last accessed July 2, 2022).

[40] *Id.*

[41] *Id.*

a Crack. not the glass not the screen protector. what happened? don't buy this[42]

- *Review by Notworththemoney on Nov. 1, 2021*: **Touch screen** I bought 4 of these one for each of my kids and one for me and not even a week or two later most of them had either cracked without being dropped or the screen stopped working. Also the battery life lasts only an hour even if you leave it on the charger all night. I would not recommend if you need it for anything major!![43]

- *Review by Jessica on Feb. 16, 2022*: **dont waste your money** dont buy this product we bought 6 of tbese for our kids for xmas and if you barley drop the tablet or bang it on something the screen will break and wal mart or onn wont help fix or replace it if they had a rating for -5 thats how i would rate it dont waste your money very disappointed now have bunch of dispointed kids[44]

- *Review by Matthew on Jan. 5, 2022*: **Needs a better screen** They can't really needs a better screen the screen cracked underneath the screen protector while my son was in a car mind you it was -27 this morning but still the screen should have not broke under the screen protector he was doing nothing but watching his videos looks like when the tablet heated up it ended up cracking the screen[45]

- *Review by Alayna on Jun. 26, 2022*: **Broke in less than a week, crappy                    quality,                    cheap.** This tablet lasted LESS than a week! The screen just stopped working with flashing all over. It wasn't dropped, sat on, thrown or hit, there is absolutely no reason the screen would have busted. My husband put the receipt in the box, which I stupidly threw away so we can't even return it when it's been less than a week. A complete waste of money, really crappy video and camera quality, super low volume you can barely hear, it worked for my toddlers first tablet but after this incident I'm appalled at how cheap this item is. Ridiculous![46]

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

- *Review by Chi134285 on Dec. 26, 2019*: **Don't do it...** I broke the screen trying to rearrange the protective case on the tablet. I bought it for my 2 year old, and for the amount I paid, I didn't expect the greatest quality. Just putting this out there to let you know how cheap and flimsy this thing is. Be very sensitive if you get a protective case.[47]

- *Review by Al on Mar. 28, 2020*: **2 out of 3 tablets don't work after 1 month.** Bought 3 of these a month ago for my kids. 2 of them have stopped working already!!!! The touch screen on one is completely unresponsive, that happened yesterday, and now another one wont even turn on at all...2 tablets down within a day of each other...almost like they're designed to fail. If you do buy one of these, get the protection plan because you're going to need it.[48]

- *Review by Awful on Sep. 24, 2020*: **Don't waste your money or your sanity** This is the worst brand of tablet I've ever purchased. This makes the 3rd one I've had to exchange because the screen has quit working yet again. It's like there's a sensor in the screen that quits working. It's been the same issue with each one we've purchased.[49]

- *Review by NaNa1680 on Jul. 17, 2020*: **Worst tablet everrrrr** The worst tablet ever..well actually u get what u pay for an for $40 I shouldn't have expected much..got it to replace my 8yrs tablet she broke..this tablet takes FOREVER 2 charge which is a nightmare to a kid..once it's dead it DEAD for about 6hrs til it recharges..it loads slowly..I bought it a month ago an it's frozen,an the touch screen is inactive which renders the tablet useless..I want my $40 back..DNT buy this unless u want to waste ur money..only been a month an it's trash[50]

76.    Based on the prevalence of these and similar reviews, Walmart was aware or should have become aware of the Display Defect in late 2019, soon after the first negative reviews were posted to its website.

---

[47] *onn. 7" Tablet 16GB Android*, Walmart.com, *available at* https://www.walmart.com/reviews/product/337319622?filter=1 (*last accessed* July 2, 2022).
[48] *Id.*
[49] *Id.*
[50] *Id.*

77.     Despite this knowledge, Walmart has failed to disclose and has actively concealed the true nature of the Display Defect from Plaintiff, Class members and the public. Walmart continues to market and advertise the Class Devices to unsuspecting customers as though they do not possess the Display Defect, repeating false and misleading representations to induce consumers to purchase the tablets.

**E.  Defendant Has Not Remedied the Display Defect**

78.     Thus far, Defendant has not acknowledged the Display Defect, much less attempted to repair or remedy it.

79.     Defendant provides owners of defective Class Devices the option to return their tablets within thirty days for a replacement. But many of those owners who have opted to exchange their Class Devices report that the Display Defect also manifested on their replacement tablets, and sometimes in the replacements for the replacements.

80.     Class Device owners who have opted for a replacement are sometimes forced to pay restocking, exchange, and shipping fees. Additionally, owners of defective Class Devices have spent countless hours interacting with Defendant's customer service agents, dealing with the replacement or repair processes, and setting up replacement tablets, among other things.

81.     As explained in more detail below, Defendant explicitly excludes display damage from the warranty. Thus, Class Device purchasers are unable to send their tablets in for replacement or repair after the thirty-day return period. Defendant also refuses to provide refunds to owners of defective Class Devices outside of the thirty-day return period. This is an abusive business practice in light of the fact that Defendant has not taken any steps to inform the public at large that the Class Devices are impacted by the Display Defect, nor has it been forthright with owners of the Class Devices about the nature of the Display Defect. Moreover, many owners of

defective Class Devices have found themselves unable to secure a repair or replacement within the one-year warranty period due to Defendant's unresponsive and hostile customer service. This is also an abusive business practice.

82.     Despite not being able to offer a failsafe solution to the Display Defect, Walmart still does not offer owners of defective Class Devices the option of a full refund outside the return period.

83.     Walmart has made no effort to communicate to the public at large that the Class Devices are defective.

84.     Defendant has caused injury to a sizable number of owners of Class Devices and continues to misleadingly market the Class Devices as high-quality, versatile, and dependable tablet computers.

**F.      Walmart Breached the Express Warranties Covering the Class Devices**

85.     Pursuant to a written express warranty, the Class Devices are subject to a one-year warranty period (the "Limited Warranty"). The Limited Warranty covers "defects in materials or workmanship."[51]

86.     Under the terms of the Limited Warranty, Defendants promise to "either replace a defective part with a new or refurbished part without a charge to you. If your unit is deemed unrepairable, onn will replace the unit with a new or refurbished unit at Walmart's sole discretion." The customer must pay for "transportation cost and insurance charges (if applicable) to Corporate. It is the customer' s responsibility to retain original packaging or provide like packaging in order to facilitate the warranty process. Walmart will incur no liability whatsoever

---

[51] *See Onn 10.1" Tablet 100003562 User Guide*, Manualsplus.com, *available at* https://manuals.plus/onn/10-1-tablet-100003562-manual#getting_to_know_your_tablet (*last accessed* July 2, 2022).

to provide packaging for warranty items. Should the product be damaged due to insufficient packaging, the warranty may be voided." A customer must also obtain a "return authorization number . . . before sending the unit in for service."[52]

87.     The Limited Warranty specifically excludes the following: "a cracked screen . . . or any other products, parts or accessories that have been . . . damaged by misuse or accident, neglect, [or] acts of God such as lightning."[53]

88.     Buyers have no pre-sale knowledge or ability to bargain as to the terms of the warranties.

89.     Defendants breached of these warranties by, *inter alia*, failing to repair or remedy the Display Defect in the Class Devices. Class members complained to Defendants about the Display Defect, but did not receive an adequate repair, breaching the express and implied warranties provided by Defendants.

90.     Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Display Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members. Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the Display Defect at the time of sale.

---

[52] *Id.*
[53] *Id.*

91.     Furthermore, Defendant specifically excludes the damage caused by the Display Defect—*i.e.*, cracked screens—from the Limited Warranty, rendering it useless for Plaintiff and the Class members.

## TOLLING OF THE STATUTE OF LIMITATIONS

92.     The statute of limitations for any claims that Plaintiff bring or could bring against Walmart are tolled as a result of Walmart's fraudulent concealment and unlawful acts. Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims asserted herein until the Display Defect surfaced in Plaintiff's Class Devices.

93.     As set forth above, Walmart acted unfairly, fraudulently, and deceptively in concealing the Display Defect from Plaintiff and other consumers by making false representations about the superior quality of the Class Devices' displays, as set forth above, to entice consumers to buy the Display Defective Class Devices. In addition, as alleged herein, Walmart was aware of numerous consumer complaints about the Display Defects in the Class Devices, but never disclosed the Display Defects to Plaintiff and the Class, and instead, continued making false representations about the performance and quality of the Class Devices and continued selling the Class Devices, despite their defective designs.

94.     At the time of the purchase of their Class Devices, Plaintiff was unaware of any public information offered by Defendant that would have put her on notice that the Class Devices were defective. Plaintiff understandably and reasonably relied on the representations that Walmart made about the Class Devices as having a high-quality display and being versatile and durable, as set forth herein. Plaintiff became aware of the latent and unobservable Display

Defect only after it impacted her Class Devices. Plaintiff was not at fault for failing to discover the Display Defective design in the Class Devices as the source of the display issues.

95.     Had Plaintiff and the Class known that the Class Devices were defective, they would not have purchased the Class Devices, would not have purchased them at the prices they did, or would have returned them during their respective return periods.

96.     Walmart had a duty to publicly disclose the Display Defect because, through its advertisements and promotional materials, it represented to Plaintiff and the Class that, among other things, the Class Devices had high quality displays and were versatile and dependable. Walmart failed to disclose facts that would have materially qualified these representations, including that the display and case are made of inappropriate materials and that the case suffers from a design defect that makes the display susceptible to breaking, suffering display issues, and complete display failure. Walmart had a duty to disclose the truth about the Display Defective design, and that the display screens were not of high quality, as Walmart represented them to be. Walmart concealed these defects from Plaintiff and the Class.

## CLASS ALLEGATIONS

97.     Plaintiff brings this lawsuit on behalf of himself and all similarly situated individuals and entities, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class and Subclass (collectively, the "Classes") are defined as follows:

**Nationwide Class**

All persons in the United States who purchased a Class Device (the "Class").

**Indiana Subclass**

All persons in Indiana who purchased a Class Device (the "Subclass").

98.     Excluded from the Classes are Defendant, its affiliates, and its current and former employees, officers, and directors. Plaintiff reserves the right to modify, change, or expand the definitions of the Class and Subclass based upon discovery and further investigation.

99.     *Numerosity*: The Classes are so numerous that joiner of all members is impracticable. At least thousands of Class members have been subjected to Defendant's conduct in each state. The class is ascertainable by reference to records in the possession of Walmart and its retail locations.

100.    *Predominance*: Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions affecting individual members of the Classes and include:

a)      Whether the Class Devices possess a design defect;

c)      Whether the Class Devices were defective at the point of sale;

d)      Whether the Display Defect substantially reduces the value of the Class Devices;

e)      Whether Defendant knew of the Display Defect but failed to disclose it to consumers;

f)      Whether and when Defendant knew that the Class Devices' displays are especially prone to cracking and malfunctioning during normal and expected use conditions, rendering them functionally unusable;

g)      Whether a reasonable consumer would consider the Display Defect to be material;

h)      Whether Defendant's conduct was unlawful;

i)      Whether Defendant acted negligently, recklessly, and/or with intent to deceive;

j)      Whether Plaintiff and Class members overpaid for their Class Devices as a result of the Display Defect;

k)    Whether Plaintiff and Class members are entitled to damages and other monetary relief, and, if so, in what amount; and

l)    Whether Plaintiff and Class members are entitled to equitable relief, including restitution or injunctive relief.

101.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Classes, as all such claims arise out of Defendant's conduct in marketing, advertising, and selling the Class Devices. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

102.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Classes and have no interests antagonistic to those of the Classes. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, product design defects, and state consumer fraud statutes.

103.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate

36

actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

104.    *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

**VIOLATION OF THE MAGNUSSON-MOSS WARRANTY ACT,
15 U.S.C. §§ 2301 *et seq*.
(On Behalf of the Nationwide Class)**

105.    Plaintiff repeats and realleges allegations above as if fully set forth herein.

106.    Plaintiff brings this Count individually and on behalf of the Classes.

107.    Plaintiff and Class members are "consumers" within the meaning of the Magnusson-Moss Warranty Act ("MMWA"). 15 U.S.C. § 2301(3).

108.    The Class Devices are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

109.    Walmart is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

110.    This claim is being brought under Section 2310(d)(a) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction which provides a cause of

action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

111.    The Class Devices' implied warranties are accounted for under Section 2301(7) of the MMWA, and are warranties which Walmart cannot disclaim, when they fail to provide merchantable goods.

112.    As set forth herein, Walmart breached its warranties with Plaintiff and Class members.

113.    Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

[T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor. Id.

114.    The Class Devices share common defects in that they possess defective displays.

115.    Despite demands by Plaintiff and the Class for Walmart to pay the expenses associated with diagnosing and repairing the Display Defective tablets which were borne by consumers, Walmart has refused to do so.

116.    As a direct and proximate result of Walmart's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class members have suffered damages in an amount to be proven at trial.

117.    At least one of the Plaintiff and the other Class members would suffer economic hardship if they returned their Class Devices but did not receive the return of all payments made by them. Because Walmart is refusing to acknowledge any revocation of acceptance and

immediately return any payments made, Plaintiff and the other Class members have not reaccepted their tablets by retaining them.

118.    The amount in controversy in each Plaintiff's individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

119.    Plaintiff and Class members are entitled to recover damages as a result of Defendant' breach of warranties.

120.    Plaintiff and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## SECOND CAUSE OF ACTION

### INDIANA DECEPTIVE CONSUMER SALES ACT,
### Ind. Code §§ 24-5-0.5-1, et seq.
### (On Behalf of the Indiana Subclass)

121.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

122.    Plaintiff brings this Count individually and on behalf of the Indiana Subclass.

123.    Plaintiff, Class members, and Defendant each qualify as a "person" under the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-2.

124.    Defendant qualifies as a "supplier" under Ind. Code § 24-5-0.5-2.

125.    Each of Defendant's sales of the Class Devices qualifies as a "consumer transaction" under Ind. Code § 24-5-0.5-2.

126.    As alleged herein, Defendant engaged unfair, abusive, and deceptive acts, omissions, and practices in connection with the sales of the Class Devices in violation of Ind. Code § 24-5-0.5-3(a).

127.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the quality, characteristics, and usefulness of the Class Devices.

128.    Defendant's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

129.    The injury to consumers from Defendant's conduct was and is substantial because it was non-trivial and non-speculative and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

130.    Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the Display Defect, i.e., that the Class Devices' displays are susceptible to cracking and malfunctioning during the course of normal usage, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

131.    Defendant's business practices, in concealing material information or misrepresenting, inter alia, the qualities and characteristics of the Class Devices, had no countervailing benefit to consumers or to competition.

132.    Defendant's acts and practices were "abusive" for numerous reasons, including: (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took

unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction, consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Defendant; (d) because Defendant took unreasonable advantage of consumers' reasonable reliance that it was providing truthful and accurate information.

133.    Defendant also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including but not limited to:

   a.   representing through advertisements and product packaging that the Class Devices have characteristics, uses, and benefits that they do not have;

   b.   representing through advertisements and product packaging that the Class Devices were of a particular standard or quality that it knew or should have known that it is not; and

   c.   representing that the purchase of a Class Device involves a warranty if the representation is false and if the supplier knows or should reasonably know that the representation is false.

134.    Defendant's representations and omissions include both implicit and explicit representations and were carried out as a scheme or artifice to defraud.

135.    Such pattern of conduct was uniform in nature with respect to the marketing and sale of the Class Devices.

41

136.    Defendant knew or should have known that the Class Devices suffered from the Display Defect, i.e., that their displays are susceptible to cracking and malfunctioning during the course of normal usage.

137.    Defendant's conduct includes incurable deceptive acts that Defendant engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

138.    Defendant had actual and constructive notice of the Display Defect prior to Plaintiff's purchase on account of the numerous consumer complaints it received, including from Class members, concerning the extraordinary susceptibility of the Class Devices to screen cracking and malfunctioning. Additionally, Defendant was made aware of the Defect soon after the launch of the Class Devices due to the large number of returns and/or warranty claims made within and outside of the warranty period because of the Display Defect.

139.    Moreover, sending pre-suit notice pursuant to Ind. Code § 24-5-0.5-5 is an exercise in futility for Plaintiff, as Defendant's unfair, abusive, and deceptive acts and practices, or its violations of Indiana Deceptive Consumer Sales Act, were incurable and, in any case, were not cured.

140.    As a direct and proximate result of Defendant's uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff and Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Devices, and increased time and expense in dealing with repairs and attempted returns of and/or warranty claims for the Class Devices.

141.    The Defendant's violations present a continuing risk to Plaintiff and Indiana Subclass members as well as to the general public.

142.    Plaintiff and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

### THIRD CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (On Behalf of the Classes)

143.    Plaintiff repeats and realleges allegations above as if fully set forth herein.

144.    Plaintiff brings this Count individually and on behalf of the Classes.

145.    The Class Devices are and were at all relevant times "goods" within the meaning of, inter alia, Ind. Code Ann. § 26-1-2-103.

146.    Walmart is and was at all relevant times a "seller" with respect to the Class Devices, under, inter alia, Ind. Code Ann. § 26-1-2-103.

147.    Plaintiff and Class members are "buyers" within the meaning of, inter alia, Ind. Code Ann. § 26-1-2-103.

148.    Plaintiff and Class members bought Class Devices designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Walmart.

149.    Walmart expressly warranted the Class Devices against defects, including the Display Defect.

150.     As described above, the display in the Class Devices is defective. The Display Defect substantially impairs the use, value, reliability, and performance of the Class Devices to reasonable consumers, including Plaintiff and Class members.

151.     Walmart knew of the Display Defect when it expressly warranted the Class Devices, wrongfully and fraudulently concealed material facts regarding the Display Defect, failed to inform Class members that the Class Devices had the Display Defect, and induced Plaintiff and Class members to purchase or lease the Class Devices under false and/or fraudulent pretenses.

152.     Walmart is obligated, under the terms of its express warranties, to repair and/or replace the Class Devices for Plaintiff and Class members.

153.     Walmart breached its express warranties by supplying the Class Devices to Plaintiff and Class members with the Display Defect.

154.     Walmart further breached its express warranties by failing to repair the Class Devices and by failing to provide to Plaintiff or Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Devices to Plaintiff and Class members.

155.     As more fully detailed above, Walmart was provided with appropriate notice and has been on notice of the Display Defect and of its breach of express written warranties from various sources, including Plaintiff.

156.     Plaintiff has given Walmart a reasonable opportunity to cure its failures with respect to its warranties, and Walmart has failed to do so.

157.     Affording Walmart any further opportunity to cure their breach of written warranties is unnecessary and futile here.

158.    Any express warranties promising to repair and/or correct any defects fail in their essential purposes because the contractual remedy is insufficient to make Class members whole and because Walmart has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

159.    Accordingly, recovery by the Class members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

160.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Walmart to limit or disclaim the express warranties in a manner that would exclude coverage of the Display Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Walmart's concealment of material facts. Thus, any effort by Walmart to disclaim, or otherwise limit, its liability for the Display Defect is null and void.

161.    As a direct and proximate result of Walmart's breach of express warranties, Plaintiff and Class members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

162.    Plaintiff and Class members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Classes)**

163.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

164.    Plaintiff brings this Count individually and on behalf of the Classes.

165.    The Class Devices are and were at all relevant times "goods" within the meaning of, inter alia, Ind. Code Ann. § 26-1-2-103.

166.    Walmart is and was at all relevant times a "seller" with respect to the Class Devices, under, inter alia, Ind. Code Ann. § 26-1-2-103.

167.    Plaintiff and Class members are "buyers" within the meaning of, inter alia, Ind. Code Ann. § 26-1-2-103.

168.    Walmart impliedly warranted that the Class Devices were of a merchantable quality.

169.    Walmart breached the implied warranty of merchantability because the Class Devices were not of a merchantable quality due to the Display Defect.

170.    Plaintiff and Class members' interactions with Walmart suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third party beneficiaries of contracts (including implied warranties) between Walmart and the retailers who sell the Class Devices. Defendant's warranties were designed for the benefit of consumers who purchase(d) Class Devices.

171.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

172.    Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Display Defect.

173.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time

limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Devices were defective at the time of sale and that the Tablets would fail well before their useful lives.

174.    Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

175.    Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Display Defect became public.

## FIFTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT
### (On behalf of the Classes)

176.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

177.    Plaintiff brings this Count individually and on behalf of the Classes.

178.    Walmart concealed and suppressed material facts concerning the quality of the Class Devices, specifically the displays in the Class Devices.

179.    Walmart concealed and suppressed material facts concerning the Display Defect causing Class Devices to become impaired and to lose functionality and become inoperable. The Display Defect is latent and lies in the internal components of the Class Devices. Walmart knew that Plaintiff and Class members would not be able to inspect or otherwise detect the Display Defect prior to purchasing the Class Devices. Walmart furthered and relied upon this lack of disclosure to promote Class Devices—all the while concealing the true nature of the Display Defect from Plaintiff and Class members.

180.    Walmart concealed and suppressed material facts that point to the nature of the Display Defect being the result of inappropriate materials and a design defect, and instead pushed multiple models of defective Class Devices to thousands of unsuspecting consumers.

181.    Walmart did so to boost confidence in its Class Devices and falsely assure purchasers that the Class Devices were durable, reliable, capable, and suitable for professional and casual use, and concealed the information in order to prevent harm to Walmart and its products' reputations in the marketplace and to prevent consumers from learning of the Display Defective nature of the Class Devices prior to their purchase. These false representations and omissions were material to consumers, both because they concerned the quality of the Class Devices and because the representations and omissions played a significant role in their decisions to purchase or lease the Class Devices.

182.    Walmart had a duty to disclose the Display Defect in the Class Devices because it was known and/or accessible only to Walmart; Walmart had superior knowledge and access to the facts; and Walmart knew the facts were not known to or reasonably discoverable by Plaintiff and Class members.

183.    Walmart also had a duty to disclose because it made many general affirmative representations about the quality, warranty, and lack of defects in the Class Devices as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, and usability. Even when faced with complaints regarding the Display Defect, Walmart misled and concealed the true cause of the symptoms complained of. As a result, Class members were misled as to the true condition of the Class Devices once at the time of purchase and again when the Display Defect was complained of to Walmart. The omitted and concealed facts were material because they directly

impact the value, quality, appeal, and usability of the Class Devices purchased by Plaintiff and Class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

184.    Walmart actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, and avoid recalls that would affect the brand's image and cost money, and it did so at the expense of Plaintiff and Class members.

185.    Walmart has still not made full and adequate disclosure and continues to mislead Plaintiff and Class members and conceal material information regarding defects that exist in Walmart Class Devices.

186.    Plaintiff and Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts, in that they would not have purchased Class Devices marketed and sold by Walmart or chosen different models not known to possess the Display Defect. Plaintiff and Class members' actions were justified. Walmart was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class members.

187.    Because of the concealment and/or suppression of the facts, Plaintiff and Class members sustained damages because they paid value for the Class Devices not aware of the Display Defect that Walmart failed to disclose, and they paid for warranty extensions, insurance, and costs incurred in connection with warranty services to attempt to remedy the Display Defect. Had they been aware of the concealed Display Defect that existed in the Class Devices, Plaintiff and Class members would have paid less for their Class Devices or would not have purchased them at all.

188.    Accordingly, Walmart is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

189.    Walmart's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being to enrich Walmart. Walmart's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**SIXTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**
**(On behalf of the Classes)**

190.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

191.    Plaintiff brings this Count individually and on behalf of the Classes.

192.    Walmart has been unjustly enriched by Plaintiff and Class members purchasing Class Devices from Walmart and purchasing replacements and services from Walmart that Plaintiff and Class members would not have purchased but for Walmart's misconduct alleged above with respect to the Display Defect.

193.    Plaintiff and Class members unknowingly conferred a benefit on Walmart of which Walmart had knowledge, since Walmart was aware of the Display Defective nature of the Class Devices and the resultant display failures but failed to disclose this knowledge and misled Plaintiff and Class members regarding the nature and quality of the Class Devices while profiting from this deception.

194.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Walmart to retain the benefit of profits that it unfairly obtained from Plaintiff and Class members. These profits include the price Plaintiff and the Class paid for the Class

Devices and the cost of the services, replacements, and warranty-related expenditures to temporarily alleviate the Display Defect.

195.    Plaintiff and Class members, having been damaged by Walmart's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Walmart to their detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of themselves and the proposed Classes:

a. an order certifying the proposed Classes, designating Plaintiff as named representatives of the Classes, and designating the undersigned as Class Counsel;

b. a declaration that the displays are defective;

c. a declaration that Walmart is financially responsible for notifying all Class members about the Display Defective nature of the Class Devices;

d. an order enjoining Walmart from further deceptive distribution and sales practices with respect to the Class Devices, and to permanently repair the Class Devices so that they no longer possess the Display Defect;

e. an award to Plaintiff and Class members of compensatory, exemplary, and statutory damages (except as expressly disclaimed herein), including interest, in an amount to be proven at trial;

f. a declaration that Walmart must disgorge, for the benefit of Plaintiff and the Class members, all or part of the ill-gotten profits it received from the sale of the Class Devices, or make full restitution to Plaintiff and the Class;

g. an award of attorneys' fees and costs as allowed by law;

h.  an award of pre-judgment and post-judgment interest;

i.  leave to amend this Complaint to conform to the evidence produced at trial; and

j.  such other and further relief as the Court may deem appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

DATED: August 15, 2023                          Respectfully submitted,


By: ___/s/ Jeff S. Gibson _____
Jeff S. Gibson, #22362-4
**WAGNER REESE, LLP**
11939 N. Meridian St., Ste. 100
Carmel, IN 46032
Telephone: (317) 569-0000
Facsimile: (317) 569-8088
jgibson@wagnerreese.com

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio*
Jason S. Rathod*
Bryan Faubus*
412 H St NE
Washington D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com

*pro hac vice application
forthcoming


*Attorneys for Plaintiff*